```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                        FORT WAYNE DIVISION
```

TIMOTHY JESTER,              )
                             )
Plaintiff,                   )
                             )
     v.                      )   NO. 1:11-CV-14
                             )
DR. ZIMONT, et al.           )
                             )
Defendants.                  )

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss for Lack of Jurisdiction, filed by Defendant, Dr. Zimont, on August 10, 2011. For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

The following facts are based on the allegations contained in the complaint, which this Court accepts as true at this stage in the litigation.

Plaintiff, Timothy Jester ("Jester"), was incarcerated in the Pendleton Correctional Facility/f/k/a Indiana State Reformatory, Indiana Department of Corrections ("Pendleton") from August 2009 through 2010.  (Complaint, ¶ 1)  Dr. Zimont is an employee of Correctional Medical Services ("CMS") which is under contract with the State of Indiana to provide health care services to persons

incarcerated at Pendleton.  (*Id.*, at ¶ 2)

On or about August 4, 2009, Jester fell while in the shower and injured his right hand which resulted in swelling.  (*Id.*, at ¶ 4)  Two days later Jester received x-rays and met with Dr. Mihalo who determined that Jester's right hand was fractured. (Complaint, Ex. A, Notice of Tort Claim, ¶ 5; Complaint, Ex. B, Am. Notice of Tort Claim)  At this meeting Dr. Mihalo also ordered pain medication for Jester, that a splint or cast be put on his hand, and therapy.  (Complaint, ¶ 4; Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)

Approximately two weeks went by before Jester was called to nursing to have a personalized splint made for his hand. (Complaint, ¶ 4; Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)  When he arrived at nursing, Jester was treated by Dr. Zimont who made him the splint for his hand.  (Complaint, ¶ 4; Notice of Tort Claim ¶ 5; Am. Notice of Tort Claim)  Rather than custom make the splint to fit Jester's hand, Dr. Zimont made the splint to fit his own hand. (Complaint, ¶ 4; Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)  As a result, the splint did not properly fit Jester's hand and bone structure.  (Complaint ¶ 5; Notice of Tort Claim ¶ 5; Am. Notice of Tort Claim)  For approximately two weeks Jester suffered from severe distress and intense pain while wearing the splint and his hand had become malformed as a result of improper setting. (Complaint, ¶¶ 4,6)

Jester was subsequently taken to Wishard Hospital on August 31, 2009. (Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)

While at Wishard Hospital, Jester met with three different doctors who each determined that his hand could not be fixed through surgery, and that his hand would never function properly again. (Complaint, ¶ 4; Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)  The reason given by all three doctors was that the splint Jester had been wearing caused his hand to heal incorrectly because it did not fit or put pressure on the proper areas of his hand.  (Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)  The doctors ordered therapy and prescribed pain medication for Jester. (Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)  Upon returning to Pendleton, Dr. Zimont stopped the pain medication that the other doctors had prescribed for Jester. (Complaint, ¶¶ 2,6; Notice of Tort Claim, ¶ 5; Am. Notice of Tort Claim)

DISCUSSION

In the motion to dismiss, Dr. Zimont asserts that Jester's section 1983 claim sounds in medical malpractice and that Jester has failed to comply with the procedural requirements of Indiana's Medical Malpractice Act.  Therefore, Dr. Zimont contends that Jester's complaint against him should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a complaint to be dismissed for "lack of subject-matter jurisdiction." Because federal courts have limited jurisdiction, they are not permitted to hear cases for which they do not have a statutory grant of jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Internat'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009), *cert. denied by* 130 S.Ct. 442 (Oct. 13, 2009).

There are two basic statutory grants of jurisdiction for federal courts, which are codified at 28 U.S.C. §§ 1331 and 1332. Section 1331 grants the federal courts subject-matter jurisdiction over "[f]ederal-question[s]." "A plaintiff properly invokes federal question jurisdiction when she pleads a colorable claim arising under the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (internal quotations omitted).

The subject-matter "jurisdiction of the federal courts is not defeated by the possibility that the averments in the plaintiff's complaint might fail to state a cause of action on which the plaintiff could actually recover." *Bell v. Hood*, 327 U.S. 678, 685 (1946); *Jogi v. Voges*, 480 F.3d 822, 826 (7th Cir. 2007). However, federal courts will not have subject-matter jurisdiction over a plaintiff's claim in limited circumstances where the claim "clearly

appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83; *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010); *Jogi*, 480 F.3d at 826.

A claim is utterly frivolous when it is clear beyond any reasonable doubt that it does not belong in federal court. *Carr*, 591 F.3d at 917. That being said, there is a presumption that the dismissal of even a weak case should be on the merits and not because it was too weak to invoke the subject-matter jurisdiction of the federal courts. *Id.; Travelers Casualty & Surety Co. of Am., Inc. V. Northwestern Mutual Life Ins. Co.*, 480 F.3d 499, 501 (7th Cir. 2007). Moreover, the exhaustion of state remedies is not required before a federal court can obtain subject-matter jurisdiction over claims brought under section 1983. *Jones v. Bock*, 549 U.S. 199, 200 (2007); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982).

Turning to the instant motion, Jester brought his claim against Dr. Zimont pursuant to section 1983 in order to vindicate an alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment. In his complaint, Jester referenced specific conduct allegedly undertaken by Dr. Zimont which is believed to have resulted in deficient medical care and treatment for Jester's fractured hand. Jester alleges that this conduct rises to the level of cruel and unusual punishment. Accordingly,

Jester has plead a colorable claim that arises under the U.S. Constitution and laws of the United States.

Dr. Zimont's assertion that Jester's section 1983 claim sounds in medical malpractice and that Jester's failure to comply with the requirements of Indiana's Medical Malpractice Act strips this Court of subject-matter jurisdiction is unfounded.

As an initial matter, Jester was not required to exhaust state administrative remedies prior to bringing his claim under section 1983.  *Jones*, 549 U.S. 200.  Moreover, Dr. Zimont has seemingly overlooked the basic proposition that the same set of facts can give rise to multiple causes of action under both federal and state law.  Had Jester chosen to file his complaint against Dr. Zimont in Indiana state court asserting a claim of medical malpractice he would be bound by the procedural requirements set forth in Indiana's Medical Malpractice Act.  However, Jester made the decision to pursue a claim against Dr. Zimont under federal law, not Indiana law.  As such, federal law and procedure govern his claim.

Additionally, Dr. Zimont's assertion that Jester's claim should be dismissed because the alleged conduct of Dr. Zimont does not rise to the level of "deliberate indifference" is unpersuasive. In order for a prisoner to prevail on an Eighth Amendment claim for cruel and unusual punishment based on deficient medical care the following two elements must be proven: 1) the prisoner had an

objectively serious medical condition; and 2) a prison official's deliberate indifference to that condition. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Roe v. Elyea*, 631 F.3d 843, 855 (7th Cir. 2011).

The question of whether Dr. Zimont's alleged conduct rises to the level of "deliberate indifference" goes to the merits of Jester's claim and is not a proper consideration for this Court in ruling on a motion to dismiss for lack of subject-matter jurisdiction.  See *Haury v. Lemmon*, 656 F.3d 521, 522 (7th Cir. 2011)(noting that "a dismissal for lack fo jurisdiction is not the same as a dismissal for failure to state a claim.").  At this stage of the litigation, had Dr. Zimont wanted this Court to inquire into Jester's ability to prevail on the merits of his claim, the appropriate motion to file would have been a motion to dismiss for failure to state a claim.

CONCLUSION

For the reasons set forth above, Dr. Zimont's Motion to Dismiss is **DENIED**.

**DATED:  November 29, 2011**           /s/RUDY LOZANO, Judge
                                        **United States District Court**